UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
PLUMBERS LOCAL #200 PENSION FUND,   )
  Individually and on Behalf of All Others )
  Similarly Situated,               )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )   Civil Action No. 10-1835 (PLF)
                                    )
THE WASHINGTON POST COMPANY, et al., )
                                    )
        Defendants.                 )
_____)

MEMORANDUM OPINION

This case is a purported federal securities class action brought on behalf of all persons who acquired Washington Post common stock between July 31, 2009 and August 13, 2010. This matter is before the Court on Iron Workers Local No. 25 Pension Fund's ("Iron Workers") motion for appointment as lead plaintiff in this purported class action and for approval of its selection of counsel pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The counsel it proposes are the counsel who filed the complaint in this case on behalf of Plumbers Local #200 Pension Fund ("Plumbers Local"), individually and on behalf of all similarly situated entities. No one has filed an opposition to the pending motion. Upon consideration of Iron Workers' papers, the relevant legal authorities, and the entire record in this case, the Court will grant Iron Workers' motion.[1]

_____

[1] The papers reviewed in connection with the pending motion include: the class action complaint for violations of securities laws ("Compl."); Iron Workers Local No. 25 Pension

## I. BACKGROUND

On October 28, 2010, plaintiff Plumbers Local filed a complaint in this Court on behalf of itself and a purported class of all those who purchased Washington Post common stock between July 31, 2009 and August 31, 2010 (the "Class Period"). See Compl. ¶ 5. In its complaint, Plumbers Local named three defendants: (1) the Washington Post, a diversified education and media company; (2) Donald E. Graham, the chairman of the board and the chief executive officer of the Washington Post since 1993; and (3) Hal S. Jones, the senior vice president of finance and the chief financial officer of the Washington Post since January 2009. See id. ¶¶ 6, 13-15.

Plumbers Local alleges that during the Class Period, the defendants issued materially false and misleading statements about the Washington Post's business and financial results. Compl. ¶ 7. As Plumbers Local describes it, "defendants failed to disclose that the [Washington Post] had been engaging in abusive and fraudulent recruiting and financial aid lending practices, thereby increasing [the] Washington Post's student enrollment and revenues." Id. As a result, the Washington Post's common stock allegedly traded at "artificially inflated prices during the Class Period, reaching a high of $541.38 per share on April 15, 2010." Id. Eventually, however, information about the Washington Post's allegedly abusive and fraudulent practices "seeped into the market" resulting in "massive sales" of common stock, which decreased their value "approximately 41.7% from the Class Period high." Id. ¶ 11. Plumbers Local seeks damages and injunctive relief. Id. at 16.

---

Fund's motion for appointment as lead plaintiff and for approval of lead plaintiff's selection of counsel ("Mot."); the Declaration of Roger M. Adelman in support of Iron Workers Local No. 25 Pension Fund's motion for appointment as lead plaintiff and for approval of lead plaintiff's selection of counsel ("Adelman Decl."); and Exhibits A through D to the Adelman Declaration.

Under the procedures established by the PSLRA, on October 28, 2010, the same day it filed its complaint, Plumbers Local caused notice of the pendency of this case to be published in *Business Wire*, a widely-circulated, national, business-oriented wire service. See Mot., Ex. A to Adelman Decl., Notice of Class Action Suit at 1, Oct. 28, 2010. On December 27, 2010 — 60 days after the notice publication in *Business Wire* — Iron Workers filed a motion requesting that it be appointed lead plaintiff and that its selection of counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") be approved and appointed as lead counsel. See Mot. at 1. Iron Workers asserts that it should be appointed lead plaintiff because it (1) timely filed its motion, (2) has the largest financial interest in this case, and (3) will fairly and adequately represent the interests of the purported class. Id.

## II. LEGAL STANDARD

The PSLRA sets forth the procedure governing the appointment of a lead plaintiff in a private class action brought under the Securities Exchange Act. See 15 U.S.C. § 78u-4(a)(3); Reese v. Bahash, 248 F.R.D. 58, 61-62 (D.D.C. 2008); In re XM Satellite Radio Holdings Sec. Litig., 237 F.R.D. 13, 16-17 (D.D.C. 2006). Under the PSLRA, the Court shall appoint as lead plaintiff the member or members of the purported class "that the court determines to be the most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The Court "shall adopt a [rebuttable] presumption that the most adequate plaintiff . . . is the person or group of persons that — [1] has either filed the complaint or made a motion in response to a notice . . . ; [2] in the determination of the court, has the largest financial interest in the relief sought by the class; and [3] otherwise satisfies the requirements of Rule 23

of the Federal Rules of Civil Procedure." Id. § 78u-4(a)(3)(B)(iii)(I). This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff — [1] will not fairly and adequately protect the interests of the class; or [2] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. § 78u-4(a)(3)(B)(iii)(II).

As Judge Huvelle has explained, "[t]he [lead plaintiff] selection process begins once the first plaintiff files an action and publicizes the pendency of the action, the claims made, and the purported class period." In re XM Satellite Radio Holdings Sec. Litig., 237 F.R.D. at 17 (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)). "The second step is for the court to choose the plaintiff who has the greatest financial stake in the outcome of the case." Id. (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). "The PSLRA's presumption that the most adequate plaintiff is the one with the largest financial interest reflects Congress' desire to curtail lawyer-driven securities class actions." Id. (citing H.R. CONF. REP. NO. 104-369, at *31 (1995), reprinted in 1995 U.S.C.C.A.N. 370). "To achieve this goal, Congress sought to attract lead plaintiffs with a significant financial stake in the litigation on the assumption that they would be more likely to play an active role in directing and overseeing the litigation." Id. (citing Barnet v. Elan, 236 F.R.D. 158, 161 (S.D.N.Y. 2005)).

After a court determines which plaintiff has the greatest financial stake in the case, the PSLRA requires that the court evaluate whether that plaintiff satisfies Rule 23(a) of the Federal Rules of Civil Procedure. See In re XM Satellite Radio Holdings Sec. Litig., 237 F.R.D. at 18. "[A]lthough Rule 23(a) includes four requirements — numerosity, commonality, typicality, and adequacy — the presumptive lead plaintiff 'need only make a preliminary showing

4

that it satisfies the typicality and adequacy requirements of Rule 23.'" Reese v. Bahash, 248 F.R.D. at 62 (quoting In re XM Satellite Radio Holdings Sec. Litig., 237 F.R.D. at 18).

The typicality requirement "'asses[es] whether the action can be efficiently maintained as a class and whether the [movant has] incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.'" In re XM Satellite Radio Holdings Sec. Litig., 237 F.R.D. at 18 (quoting Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir. 1994)). Accordingly, "[t]ypicality is generally satisfied when the [movant's] claims arise from the same course of conduct, series of events, or legal theories as the claims of other class members." Id.; see Reese v. Bahash, 248 F.R.D. at 63 (typicality satisfied "'if each class member's claim arises from the same course of events that led to the claims of the [movant] and each class member makes similar legal arguments to prove the defendant's liability'") (quoting In re Lorazepam & Clorazepate Antitrust Litig., 202 F.R.D. 12, 27 (D.D.C. 2001)). The adequacy requirement assesses whether the movant "'has the ability and incentive to represent the claims of the class vigorously,' [and] has retained 'adequate counsel,'" as well as whether "there exists any 'conflict between [the movant's] claims and those asserted on behalf of the class.'" In re XM Satellite Radio Holdings Sec. Litig., 237 F.R.D. at 18 (quoting Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir. 1988)); see also Reese v. Bahash, 248 F.R.D. at 63 (to satisfy adequacy requirement, movant "'must not have antagontistic or competing interests with the unnamed members of the class'" and "'must appear able to vigorously prosecute the interests of the class through qualified counsel'") (quoting Twelve John Does v. District of Columbia, 117 F.3d 571, 575 (D.C. Cir. 1997)).

The final step in the determination of the lead plaintiff "is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." In re XM Satellite Radio Holdings Sec. Litig., 237 F.R.D. at 18 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). "If the presumption is overcome, the court must then turn to the plaintiff with the next highest financial interest in the litigation and start the process over again until all challenges have been exhausted." Id.

With respect to the appointment of lead counsel, the PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The PSLRA "'evidences a strong presumption in favor of approving a properly-appointed lead plaintiff's decisions as to counsel selection and counsel retention.'" In re XM Satellite Radio Holdings Sec. Litig., 237 F.R.D. at 21 (quoting In re Cendant Corp. Litig., 264 F.3d 201, 276 (3d Cir. 2001)).

III. DISCUSSION

*A. Lead Plaintiff*

Under the PSLRA's framework, the Court concludes that Iron Workers is the member of the purported plaintiff class that is the "most capable of adequately representing the interests of class members." 15 U.S.C. § 78-4(a)(3)(B)(i). As an initial matter, Iron Workers complied with the PSLRA's procedural requirements by timely moving to be appointed lead plaintiff, signing and filing a certification as described in 15 U.S.C. § 78u-4(a)(2), and selecting and retaining counsel to represent itself and the class. See Reese v. Bahash, 248 F.R.D. at 62 (citing 15 U.S.C. §§ 78u-4(a)(2) & (a)(3)); see also Mot. at 4. Furthermore, Iron Workers has

provided documentation that it purchased 2,060 shares of Washington Post common stock during the Class Period, see Mot., Ex. C to Adelman Decl., Movant's Purchases and Losses at 1, and asserts that it "lost in excess of $245,000 due to [the] defendants' [alleged] misconduct." Mot. at 4; see Mot., Ex. C to Adelman Decl., Movant's Purchases and Losses at 1. Thus, Iron Workers concludes that, "[t]o the best of [its] knowledge, there are no other applicants . . . who have a larger financial interest." Mot. at 4. The Court agrees. The initial named plaintiff, Plumbers Local, only purchased 440 shares of Washington Post common stock during the Class Period. See Compl., Schedule A Securities Transactions at 1. Furthermore, there is no evidence in the record that anyone else has a larger financial interest than Iron Workers, and no member of the purported class has challenged Iron Workers' claim that it has the largest financial interest in this case.

Finally, Iron Workers has made the required showing that it satisfies the typicality and adequacy requirements set forth in Rule 23(a) of the Federal Rules of Civil Procedure. As discussed, this case is a purported federal securities class action brought on behalf of all persons who acquired Washington Post common stock between July 31, 2009 and August 13, 2010. See Compl. ¶ 5. With respect to typicality, Iron Workers alleges that it (1) purchased Washington Post common stock during the Class Period; (2) was adversely affected by defendants' false and misleading statements; and (3) suffered damages as a result. See Mot. at 5. Iron Workers' "claims are typical because they arose out of the same course of events as the claims of absent class members." Reese v. Bahash, 248 F.R.D. at 63. With respect to adequacy, Iron Workers' interests are aligned with those of the purported class because "it has the largest financial interest in the relief sought by the class, and there is no evidence of any conflict between its interests and

7

those of other class members." Id. And as discussed below, Iron Workers has selected and retained experienced counsel, who are competent and qualified to pursue the purported class' claims. See id.

Because the PSLRA's presumption in favor of appointing Iron Workers stands unrebutted, the Court will appoint Iron Workers as lead plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii); see also Reese v. Bahash, 248 F.R.D. at 63.[2]

*B. Lead Counsel*

Iron Workers has selected and retained Robbins Geller to serve as lead counsel. See Mot. at 1, 6. As discussed, the PSLRA "'evidences a strong presumption in favor of approving a properly-appointed lead plaintiff's decisions as to counsel selection and counsel retention.'" In re XM Satellite Radio Holdings Sec. Litig., 237 F.R.D. at 21 (quoting In re Cendant Corp. Litig., 264 F.3d at 276). Robbins Geller, a large law firm with offices nationwide, "is actively engaged in complex litigation, particularly securities litigation." Mot. at 6. As other courts have recognized, "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one." In re Enron Corp. Sec., Derivative & "ERISA" Litig., 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008); see Reese v. Bahash, 248 F.R.D. at 63 (stating that Robbins Geller has "'extensive experience litigating securities class actions'" and appointing firm as lead counsel) (quoting In re XM Satellite Radio Holdings Sec. Litig., 237 F.R.D. at 21); see also In re Cardinal

---

[2] The Court notes that Iron Workers "is the type of institutional investor that Congress envisioned serving as a lead plaintiff when it passed the PSLRA." Reese v. Bahash, 248 F.R.D. at 62; see also Mot. at 5-6.

Health Inc. Sec. Litigs., 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007).[3] Because there is no dispute as to this firm's experience and qualifications, the Court approves of Iron Workers' selection and will appoint Robbins Geller as lead counsel.

## IV. CONCLUSION

For the foregoing reasons, Iron Workers Local No. 25 Pension Fund's motion for appointment as lead plaintiff and for approval of its selection of counsel [Dkt. No. 6] will be GRANTED. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

DATE: April 21, 2011

/s/
PAUL L. FRIEDMAN
United States District Judge

---

[3] Until March of 2010, Robbins Geller was known as Coughlin Stoia Geller Rudman & Robbins LLP.