**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PLUMBERS LOCAL #200 PENSION FUND, individually and on behalf of all others similarly situated,**<br><br>      **Plaintiff,**<br><br>             v.<br><br>**WASHINGTON POST COMPANY, DONALD E. GRAHAM, and HAL. S. JONES,**<br><br>      **Defendants.** | **Civil Action No. 10-01835 (BJR)**<br><br>**MEMORANDUM OPINION GRANTING DEFENDANTS' MOTION TO DISMISS** |

This matter is before the court on *Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint* [Docket No. 37; Filed May 11, 2012] ("Motion to Dismiss"). Plaintiff filed an Opposition to the Motion to Dismiss on June 25, 2012 [Docket No. 39], and Defendants filed a Reply on August 9, 2012 [Docket No. 41]. Having considered the parties' arguments, case pleadings, and relevant case law, the court finds that oral argument is unnecessary. Accordingly, for the reasons set forth below,

IT IS HEREBY **ORDERED** that the Motion to Dismiss [#37] is **GRANTED**.

## I. BACKGROUND

This matter involves allegations that Defendants committed securities fraud. On December 23, 2011, the court granted Defendants' first motion to dismiss on the grounds that the amended complaint pending at that time failed to plead a strong inference of scienter, a crucial element in securities fraud jurisprudence. *Order* [#29] at 22. However, the court agreed to permit Plaintiff to amend its complaint to attempt to cure the deficiency. *Order* [#34] at 3. The

1

Amended Complaint [Docket No. 35], which is the operative pleading for resolving the Motion to Dismiss, was filed on March 13, 2012.

As set forth in the court's prior Order, Plaintiff is the lead plaintiff in a class action lawsuit against Defendants Washington Post ("WPO"), Donald E. Graham, the Chairman of the Board and CEO of WPO, and Hal S. Jones, the Senior Vice President and CFO of WPO. Plaintiff claims that defendants violated §§ 10(b) and 20(a) of the Securities Exchange Act and Securities Exchange Commission Rule 10b-5. WPO is the parent company of Kaplan, Inc. ("Kaplan"). Among Kaplan's holdings is Kaplan Higher Education Corp. ("KHE"), a private, for-profit college with approximately seventy campuses nationwide. The lawsuit addresses dramatic decreases in the value of WPO stock in temporal proximity to revelations that the Department of Education ("DOE") and elected officials were investigating admissions and financial aid fraud throughout the for-profit college industry. *Order* [#29] at 2.

During the Class Period, which is pled as July 31, 2009 through August 13, 2010, Plaintiff alleges that Defendants "oversaw a for-profit education company built and dependent upon defrauding students and the federal government." *Plaintiff's Opposition* [#39] at 3. More specifically, Plaintiff contends that the individually named Defendants misled the market by "failing to disclose that WPO's 'strong enrollment growth' was driven not by affirmative efforts to operate within the law, but almost exclusively by predatory enrollment practices, illegal compensation policies, and [other] violations . . . ." *Id.*

As noted above, the court's prior dismissal Order focused on the lack of allegations that gave rise to the strong inference that Defendants knowingly misled the market about the value of KHE and the business practices that contributed to that value. The court's analysis centered on the conduct of and information attributable to Defendants Graham and Jones, who were the

WPO designees to communicate with the market. *See United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1118-23 (D.C. Cir. 2009) (noting that "to determine whether a corporation made a false or misleading statement with specific intent to defraud, [the court looks] to the state of mind of the individual corporate officers and employees who made, ordered, or approved the [market] statement[s]" at issue). Specifically, the court focused on seven allegations and omissions from the prior complaint that spoke to the issue of scienter of the individual Defendants. *Order* [#29] at 5-6. Because the inference that gives rise to a strong showing of scienter may be shown by a combination of information, the court considers the prior information alongside the new allegations contained in the Amended Complaint.

## II.  STANDARD OF REVIEW

To state a private securities fraud claim, a complaint must sufficiently plead that:  (1) there was a material misstatement or omission; (2) made with scienter, i.e., an intent to defraud; (3) in connection with the sale or purchase of security; (4) that was relied upon by plaintiffs; (5) which resulted in economic loss; and (6) that loss was caused by the material misstatement or omission. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). To curb potentially abusive lawsuits, motions to dismiss claims related to securities fraud are reviewed under the standard prescribed by the Private Securities Litigation Reform Act ("PSLRA"). *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1054-55 (9th Cir. 2008). This heightened pleading standard exceeds those set forth in Fed. R. Civ. P. 8 & 9. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 317 (2007). In particular, a pleading must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" and must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1), (2).

In performing the relevant analysis, the court must accept all factual allegations in the complaint as true. *Tellabs*, 551 U.S. at 322. The court must also "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[1] *Id.* In relation to scienter, "[t]he inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a *strong* inference of scienter." *Id.* at 323 (emphasis added). This consideration necessarily requires the court to consider all inferences, both for and against plaintiffs' claims. *Id.* at 323-24. "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

### III. ANALYSIS

Sufficient allegations of scienter are necessary to plead securities fraud. Scienter requires a showing that Defendants intended "to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 188 (1976). The D.C. Circuit has defined scienter as "[e]ither intentional wrongdoing or 'extreme recklessness.'" *Liberty Prop. Trust v. Republic Props. Corp.*, 577 F.3d 335, 342 (D.C. Cir. 2009) (citation omitted). While extreme recklessness is a

---

[1] Both parties move for the court to take judicial notice of certain information and documents. *Defendants' Motion to Take Judicial Notice* [Docket No. 38; Filed May 11, 2012]; *Plaintiff's Motion to Take Judicial Notice* [Docket No. 44; Filed August 28, 2012]. These motions are opposed at least in part. *See Plaintiff's Opposition* [Docket No. 40]; *Defendants' Opposition* [Docket No. 45]. To the extent that disputes exist regarding the type of information the court may consider, while the court may technically take judicial notice of some of the materials put forth by the parties, the court finds it unnecessary to consider the areas of contention. None of the material advances the allegations contained in the Amended Complaint in any appreciable way as they relate to the issue of scienter. For example, Plaintiff asks the court to take judicial notice of a United States Senate staff committee report. *Plaintiff's Motion* [#44] at 3. However, this report speaks only to what may have been known by individuals at KHE, and does not supply a sufficient link to individuals at WPO. Accordingly, the Motions are denied as moot.

lesser form of intent, it is not a "'should have known' standard." *Dolphin & Bradbury, Inc. v. SEC*, 512 F.3d 634, 639 (D.C. Cir. 2008) (citation omitted). Rather, extreme recklessness can only be shown where there is an "extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *SEC v. Steadman*, 967 F.2d 636, 641 (D.C. Cir. 1992) (citation omitted). Stated another way, scienter can only be shown where "the danger was so obvious that the actor was aware of it and consciously disregarded it." *Dolphin*, 512 F.3d at 639.

To determine whether a "strong inference of scienter" exists, the court "engage[s] in a comparative evaluation; it must consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs*, 551 U.S. at 314. To this end, "[a]n inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct." *Id.* In such a case, the allegations fail to satisfy the stringent pleading requirements of the PSLRA.

As noted above, the court previously addressed seven core allegations relevant to the issue of scienter in relation to the prior complaint. Specifically, the court considered allegations related to (1) twenty-two confidential witnesses discussing abusive and/or improper recruiting and financial aid practices, mandatory quotas, and employee compensation; (2) the individual Defendants' attendance at executive meetings where these practices may have been discussed; (3) WPO's monitoring of data related to enrollment, financial aid, and anonymous employee complaints regarding enrollment practices at KHE; (4) public statements made about KHE's business by the individual Defendants attributing growth to sound, as opposed to fraudulent, business practices; (5) the core business theory, i.e., the value of KHE to WPO's bottom line;

and (6) the remedial post-class-period conduct of the individual Defendants, including the creation of a program deferring payment of tuition. In addition, the court considered the absence of allegations that the individual Defendants profited from their alleged market fraud.

Of the seven areas referenced above, the court found that only two plausibly raised an inference of scienter and that neither alone, nor collectively, did these allegations raise a strong inference. *Order* [#29] at 12-13, 17 (attendance at executive meetings where the alleged fraud may have been discussed and statements made as market designees which either hinted at or hid the alleged fraudulent practices). By contrast, the court discredited Plaintiff's reliance on the confidential witness statements, WPO's data monitoring of KHE's business, the core business theory, and post-class-period conduct. *Id.* at 10, 14, 18-21. Moreover, the court noted the absence of any lucrative stock sales by the individual Defendants. *Id.* at 6, 21. While not conclusive, the lack of these allegations was significant and required Plaintiff to provide allegations of scienter of a "correspondingly greater" degree. *Id.* (quoting *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 198-99 (2d Cir. 2009) (citation omitted)). Plaintiff was unable to satisfy this burden.

The Amended Complaint attempts to nuance and expand allegations which speak to several of the prior categories addressed and rejected by the court. The Amended Complaint also raises new allegations which fall within previously unaddressed categories of information. In total, Plaintiff asks the court to consider approximately fourteen allegations relevant to the scienter inquiry. *See Plaintiff's Opposition* [#39] at 14-15. For ease of resolution, the court determines that these allegations fall within the following categories: participation in executive meetings; data monitoring; public statements; core business; lobbying efforts; and whistleblower lawsuits.

A. **Case Precedent and the Absence of Motive**

Prior to addressing the allegations raised in the Amended Complaint, the court notes that alleged securities fraud at for-profit education institutions has been a frequent subject of recent litigation. These cases have been overwhelmingly unsuccessful. As the court noted in its prior Order, the analysis set forth by the Ninth Circuit in *Metzler* is particularly relevant. That case also dealt with allegations of securities fraud allegedly committed by executives of a for-profit college. There, the court found that despite several witnesses' interactions with the individual defendants and their attribution of knowledge to them based on that specific interaction, a strong inference of scienter was not pled. *Metzler*, 540 F.3d at 1067-69. This holding is compelling for two primary reasons. First, the allegations in *Metzler* created a closer link between the witnesses and the individual Defendants. Second, the executives in *Metzler* were actually employed by the college and were far more involved in the day-to-day operations of the company than has been alleged here.

The court also notes persuasive holdings regarding similar allegations in cases involving the for-profit college industry. *See, e.g.*, *Oklahoma Firefighters Pension & Retirement Sys. v. Capella Educ. Co.*, 873 F. Supp. 2d 1070, 1083-84 (D. Minn. 2012) (rejecting speculative theory that management's desire to increase enrollment, coupled with knowledge of high attrition, equated to scienter of the alleged fraudulent scheme); *In re Apollo Group, Inc. Sec. Litig.*, Nos. CV-10-1735, 2012 WL 2376378, at *5-7 (D. Ariz. June 22, 2012) (rejecting a finding of scienter based on theories of rampant fraud, core business, data monitoring, attendance at executive meetings, and receipt of complaints from DOE); *Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, No. 10 C 7031, 2012 WL 1030474, at *10-12 (N.D. Ill. Mar. 27, 2012) (rejecting witnesses' statements that they were motivated to employ fraudulent practices by

pressure from management, where few reported to management, and dismissing allegations that management monitored data, even where stock sales during the class period had been made); *Karam v. Corinthian Colleges, Inc.*, No. CV 10- 6523, slip op. at 14-15 (C.D. Cal. Jan. 30, 2012) (rejecting the rehashing of allegations dismissed in previous complaint, including that senior-level officials must have been aware of fraud because of their positions, and rejecting vague statements of witnesses who did not communicate directly with defendants); *cf. Ross v. Career Educ. Corp.*, No. 10 C 276, 2012 WL 5363431, at *9-11 (N.D. Ill. Oct. 30, 2012) (finding a strong inference where allegations showed that one defendant was made aware of the fraud from multiple sources and participated in suspicious activities, but rejecting allegations against second defendant based merely on his position, SEC filings, and data monitoring).

The above case law is persuasive and represents a compelling hurdle for Plaintiff to overcome. First, many of the rejected pleadings raise strikingly similar allegations to those contained in the Amended Complaint. Second, the court notes that several pleadings were authored by the same counsel representing Plaintiff here. *See, e.g.*, *Boca Raton*, 2012 WL 1030474; *Karam*, No. CV 10-6523, slip op. Third, the court notes that the unsuccessful cases cited above address alleged fraud occurring at the company where the individual defendants were employed. None address a situation like the one present here, where the alleged fraud occurred at a subsidiary two levels below that of the parent and where neither individual Defendant is alleged to have ever worked. *See generally Pugh v. Tribune Co.*, 521 F.3d 686, 694 (7th Cir. 2008) (citation omitted) (recognizing difficulty of establishing scienter of parent company for conduct occurring at subsidiary).

Finally, the court notes the lack of suspicious stock sales attributed to the individual Defendants. Plaintiff contends that the lack of suspicious stock sales is not dispositive to the

question of whether, considering all of the other allegations, there is a strong inference of scienter. *Plaintiff's Opposition* [#39] at 20-21. By contrast, Defendants argue that the lack of stock sales cannot be ignored and makes the heightened burden borne by Plaintiff even more difficult to meet. *Defendants' Reply* [#41] at 7-8.

Both arguments contain an element of persuasion. While the lack of stock sales during the class period is not dispositive, as other courts have noted, the lack of these allegations requires that the strength of pro-scienter allegations be "correspondingly greater." *ECA*, 553 F.3d at 198-99 (citation omitted). In other words, where there are no suspicious stock sales, the more plausible inference from that fact is "that there was no insider information from which to benefit." *Metzler*, 540 F.3d at 1067. Here, "[t]he lack of *any* tangible, personal benefit [from suspicious stock sales] . . . weighs against the Officer Defendants having scienter." *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1178 (C.D. Cal. 2007).

The court is mindful of the presence of compelling case law, much of which rejects a finding of scienter involving similar, but no less voluminous, allegations. The court is also mindful of the fact that the alleged fraud at issue here is said to have occurred at a second-level subsidiary. Lastly, the absence of an identifiable motive by the individual Defendants is also noteworthy. As such, Plaintiff must provide information that not only persuades the court that scienter should be inferred, but also which results in a strong inference of scienter in comparison to the significant precedent, facts, and inferences to the contrary.

   **B.   Executive meetings**

Plaintiff contends that new information from an additional confidential witnesses provides the missing detail about the substance of information covered at executive meetings. Plaintiff also proffers allegations about Defendant Graham's attendance at meetings where

9

Kaplan's compensation practices were discussed. *Plaintiff's Opposition* [#39] at 14-15. Defendants counter that the allegations, old and new, suffer from the same shortcomings as recognized in the court's prior Order. *Defendants' Motion* [#37] at 10-11.

As a preliminary matter, the court previously considered the allegations regarding Defendant Graham's attendance at meetings addressing compensation issues. *Order* [#29] at 11-12. The court held that absent allegations that the compensation issues related to the alleged fraud, the allegations were not enough. *Id.*

Further, as before, *see id.* at 9-13, allegations that the individual Defendants attended meetings where alleged wrongful practices may have been discussed do not sufficiently raise an inference that these men were tipped off to the fraud alleged here. *See In re Fed. Nat'l Mortg. Ass'n Sec., Deriv. & ERISA Litig.*, 503 F. Supp. 2d 25, 40-41 (D.D.C. 2007) (requiring the witness to clearly articulate what defendant was told, by whom, and how he responded to it). This is especially true absent an allegation that the fraud was actually discussed and understood as such by the individual Defendants. For example, although Confidential Witness #23 contends that the individual Defendants attended meetings "where 'concerns' about Kaplan's extreme growth, hiring, and acquisition practices were discussed," *Amended Complaint* [#35] at 81, this generalized statement does not indicate that financial aid abuses and illegal recruiting and compensation practices were indicated to be the cause for concern. It is simply insufficient to provide general, nonspecific allegations regarding what the individual Defendants were told and how they interpreted it.[2] *See Order* [#29] at 12-13 (citation omitted); *see also In re Apollo*

---

[2] In addition to Confidential Witness #23, the Amended Complaint provides information from a 24th confidential witness. Although Defendants invite the court to consider information about the credibility of the witness statements, the court makes it clear that it has not done so. Consideration of this information in relation to a motion to dismiss is improper. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (noting that court must accept allegations of complaint as true in resolution of a motion to dismiss). Regardless, the court remains unpersuaded that the new witnesses offer the type of information

*Group*, 2012 WL 2376378, at \*6-7 (rejecting that similar generalized statements said to be the topic at executive meetings raised an inference of scienter).

To be clear, the statements of the twenty-four confidential witnesses contained in the Amended Complaint provide information which, if true, evidences the existence of abusive or unethical admissions and financial aid practices. However, the witness statements speak only to an alleged predatory scheme known to or encouraged by KHE and Kaplan. Apart from innuendo and conjecture, the Amended Complaint fails to provide significant allegations attributing these questionable practices to WPO or the individual Defendants. Even if the information provided in relation to executive meetings and witness statements raises some inference of scienter, these allegations are not enough to convince the court that the comparative balance of inferences "give[s] rise to a *strong* inference of scienter." *Tellabs*, 551 U.S. at 323 (emphasis added).

C.     **Data Monitoring**

Plaintiff contends that data systems maintained at the WPO level tracked enrollment and financial aid payments. *Plaintiff's Opposition* [#39] at 17. Plaintiff also contends that on an intra-company website, employees repeatedly questioned whether KHE's enrollment practices were legal. *Id.* at 15. Defendants note that this information does not differ or expand upon allegations contained in the prior complaint. *Defendants' Reply* [#41] at 12.

---

sufficient to raise a strong inference of scienter. For example, Confidential Witness #24 worked for KHE and Kaplan in a treasury function and cannot speak to the knowledge of the individual Defendants in relation to any alleged fraudulent financial scheme. *See Amended Complaint* [#35] at 23-24. As was also a shortcoming of the prior 22 confidential witnesses, neither witness is alleged to report directly to the individual Defendants. *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 141-42 (D. Conn. 2007) (recognizing difficulty of finding scienter when no witness can attest to defendants actual knowledge). Furthermore, neither witness directly attributes knowledge of the alleged fraud to them. *In re Apollo Group, Inc. Sec. Litig.*, No. CV-10-1735, 2011 WL 5101787, at \*15 (D. Ariz. Oct. 27, 2011) (holding that where "[n]one of [the] witnesses actually indicate scienter on Defendants' part," despite the volume of their statements, scienter is not shown). Assuming the witness statements are true, they are insufficient either alone, or in combination with other allegations, to raise a strong inference of scienter.

Evidence that WPO regularly received detailed KHE financial reports and anonymous complaints neither suggests that the individual Defendants received them nor that they comprehended any fraud as their foundation. *Metzler*, 540 F.3d at 1068 (finding that "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter – at least absent some additional allegation of specific information conveyed to management and related to the fraud."); *see also Order* [#29] at 13-14 (rejecting similar allegations relating to data monitoring at the parent generally which did not speak to the individual Defendants' access to the data specifically). Simply, "there is a big difference between knowing about the reports from [a subsidiary] and knowing the reports are false" or indicative of fraud. *Pugh*, 521 F.3d at 694 (alteration in original) (citation omitted); *DeVry*, 2012 WL 1030474, at *11 (rejecting that frequent monitoring of the admissions process could be said to have alerted corporate designees of alleged fraud). As in *Metzler*, the "more 'cogent'" inference is that the company "maintained its information tracking system for the necessary and legitimate purpose of running its business." *Metzler*, 540 F.3d at 1068.

### D.   Public Statements

Plaintiff contends that the individual Defendants were the WPO designees to speak to the market. *Plaintiff's Opposition* [#39] at 15-16. By extension, Plaintiff essentially argues that the public statements attributed to these executives signifies their knowledge with the underlying interworkings at Kaplan and KHE, which would include the alleged fraud being committed there. Defendants contend that these allegations were raised and rejected in relation to the prior complaint. *Defendants' Reply* [#41] at 15.

Indeed, the court previously noted that the individual Defendants' statements regarding students' difficulty in repaying loans and the concern this implicated did not raise a strong

inference that Defendants were aware of the predatory practices that allegedly attributed to this situation. *Order* [#29] at 17. Essentially, Plaintiff asks the court to infer scienter based on assertions of what the individual Defendants should have known. This is simply inadequate. *Dolphin*, 512 F.3d at 639; *Order* [#29] at 6-7 (rejecting assertion that an individual's significance to the company supplies an inference of scienter); *see also In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999) ("[A]llegations that a securities fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate . . . .'" (citation omitted)).

In regard to the present allegations (which do not deviate significantly from those already rejected), while Defendant Graham's statement to stockholders that he was concerned about low repayment rates of financial aid in the for-profit college industry continues to be one of Plaintiff's more compelling allegations of scienter, "[v]iewing the [Complaint] in its totality, . . . this statement does not raise a 'strong inference' of scienter." *Metzler*, 540 F.3d at 1069 (recognizing that heightened PSLRA standard cannot be met by one statement that is "not so indicative of fraudulent intent that it carries the weight of the entire 181-page complaint for purposes of establishing a 'strong inference' of scienter"). Moreover, the court rejects Plaintiff's contention that because the individual Defendants spoke "thoroughly and intelligently" about KHE to the market, *Plaintiff's Opposition* [#39] at 15, this leads to the strong inference that they must have known more than they let on. *In re Apollo Group*, 2012 WL 2376378, at *7. "[T]hese allegations are generally conclusory in that they rely on the assertion of what Defendants 'must have known.' This is not enough to establish a strong inference of scienter or

to link such an inference to Defendants' knowledge at the time the allegedly false or misleading statements were made." *Id.*

### E.     Core business

Plaintiff explains that during the Class Period, large sums of money were transferred between KHE/Kaplan and WPO. *Plaintiff's Opposition* [#39] at 17, 19. Plaintiff contends, in part, that WPO transferred money to Kaplan when there were shortfalls of mandatory cash on hand as required by federal regulations. *Id.* Finally, Plaintiff provides allegations related to Defendant Jones' prior employment by Kaplan as evidence that he must have been aware of the money transferring between KHE/Kaplan and WPO and the fraudulent purposes it served. *Id.* at 14. Defendants counter that Plaintiff's allegations do not evidence fraud but, rather, innocuous business practices. *Defendants' Reply* [#41] at 13. Moreover, there is no evidence that the individual Defendants were aware of such practices or that they, or anyone else at WPO, viewed it as fraudulent. *Defendants' Motion* [#37] at 14.

As a preliminary matter, the court categorizes the above allegations as a variation of the core business theory raised in Plaintiff's prior complaint because the allegations seek to show that the businesses of KHE/Kaplan and WPO were so intermingled that the individual Defendants were unquestionably aware of the fraud occurring at KHE. In this regard, evidence regarding the employment status of Defendant Jones, none of which pertains to employment at KHE, does not raise any inference that he had knowledge during the Class Period of alleged wrongdoing at KHE. *See Metzler*, 540 F.3d at 1067-69 (rejecting more compelling allegations where individuals alleged to have scienter were direct employees of the company actually alleged to have participated in the wrongful conduct). Likewise, allegations that because of Defendant Jones' previous employment by Kaplan and other non-KHE Kaplan subsidiaries prior

to the class period he "undoubtedly became aware of, supervised, and/or facilitated" in fraud related to KHE, without any supporting factual averments or attribution, *Amended Complaint* [#35] at 9-10, 72-73, 138, are simply inadequate.

Moreover, allegations that WPO or Kaplan operated as a repository for KHE funds, including Title IV funds, do not sufficiently raise an inference of scienter. Rather, these allegations (assuming they speak to company-wide fraud)[3] attempt to impose liability against WPO based on a complicated and confusing monetary scheme where there is no evidence that the individual Defendants knew about the scheme or that it was improper. This is insufficient. For example, allegations that employees at Kaplan were involved in attempts to hide cash shortages at KHE in violation of federal regulations by securing the money from WPO are insufficient because the individual Defendants are not alleged to have any knowledge of such practices. *See, e.g.*, *Amended Complaint* [#35] at 71-74. Likewise, an allegation that an improper accounting practice "was well known amongst Kaplan executives," *id.* at 65, 71-72, does not raise a sufficient inference that such practices were well known to significant individuals at WPO "absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler*, 540 F.3d at 1068. Simply, given what has been pled in the Amended Complaint, conclusory allegations that "WPO's management knew that Kaplan was not in material compliance with existing regulations," do nothing to advance an

---

[3] Defendants contend that the allegations about money transfers do not raise an inference of scienter because they do not relate to any fraudulent activity. They cite, in part, the holding of another court which reviewed similar allegations and found that they did not sufficiently explain that such actions were in violation of federal regulations. *See United States ex rel. Diaz v. Kaplan Univ.*, No. 09-20756-CIV, 2011 WL 3627285, at *6 (S.D. Fla. Aug. 17, 2011). Although this case and Defendants' other arguments arguably impact the plausibility of the allegations and, consequently, the court's requirement to assume that they are true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *Aldana v. Del Montoe Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246-48 (11th Cir. 2005), the court need not reach this issue because the allegations are insufficient to raise an inference of scienter.

inference that the individual Defendants were aware of any fraud and misled the market.[4] *Plaintiff's Opposition* [#39] at 19; *cf Amended Complaint* [#35] at 74 (describing one WPO employee's involvement in the transfers and failing to supply sufficient information to equate that involvement to WPO's knowledge of any fraud).

To the extent that Plaintiff attempts to rehabilitate these allegations with evidence that KHE was a core business of WPO, it is insufficient. *See generally Stevens v. InPhonic*, 662 F. Supp. 2d 105, 121 n.8 (D.D.C. 2009) (rejecting applicability of a core business inference). As before, the court continues to find that despite the specificity and detail of these allegations, they are insufficient to raise an inference of scienter on behalf of WPO or the individual Defendants, either in isolation or in consideration of other allegations. *See Order* [#29] at 19 (holding that "where, as here, Plaintiff's allegations rest on convincing the court that WPO executives were aware of [alleged fraud] occurring on the ground at a subsidiary of a subsidiary, it is not enough to contend that those executives should have known what was happening based merely on the value of KHE to Kaplan and, in turn, Kaplan to the ultimate parent" (citation omitted)).

### F. Lobbying efforts

---

[4] Plaintiff's attempt to show scienter on behalf of WPO based on knowledge of individuals other than the individual Defendants does not sufficiently persuade the court that lower-level employees' knowledge of discrete activities should be attributed to WPO or that these individuals understood that such actions were fraudulent. *See Plaintiff's Opposition* [#39] at 18. In this Circuit, the court primarily looks "to the state of mind of the individual corporate officers and employees who made, ordered, or approved the [market] statement[s]" at issue. *Philip Morris*, 566 F.3d at 1118. While a corporation could be found to possess its own scienter absent a finding of scienter of the individuals who spoke to the market, this occurs in rare situations where the underlying evidence of corporate-wide knowledge is so dramatic that collective knowledge may be inferred. *See, e.g.*, *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 710 (7th Cir. 2008); *cf. Philip Morris*, 566 F.3d at 1122 (citation omitted) (noting that "the legal soundness of the 'collective intent' theory" is "dubious"). Such allegations are not present here.

Plaintiff contends that Defendant Graham's increased lobbying efforts during the Class Period convey knowledge of his familiarity with Kaplan's operations and, thus, the alleged fraud committed by individuals at KHE. *Plaintiff's Opposition* [#39] at 14, 16. Specifically, Plaintiff contends that lobbying efforts aimed at staving off changes that would make it less profitable to operate for-profit colleges evidence WPO's knowledge of the underlying fraudulent practices at KHE. *Id.* at 19. By contrast, Defendants argue that Mr. Graham's lobbying efforts indicate only "that he knew – as the market knew – that KHE operated in a highly regulated sector, and that changes to regulations could potentially impact its business." *Defendants' Motion* [#37] at 17.

Evidence of Defendant Graham's lobbying efforts on behalf of KHE sheds no light on whether Mr. Graham was aware of any alleged fraud and made public statements to hide it. Arguably, the more plausible inference emanating from this activity is that, if improper conduct was occurring, Mr. Graham was unaware of it. As noted by Defendants, "Plaintiff's attempt to infer scienter from Mr. Graham's conversations with lawmakers is like its attempt to infer scienter from the fact that he spoke to the market about the company." *Id.* What remains lacking is "any corroborating details to indicate that [either activity] revealed company wide fraud, or that Defendants were aware of the fraud during the Class Period." *Metzler*, 540 F.3d at 1068 n.12. Moreover, given that Mr. Graham's lobbying efforts came during a time when government regulators were publicly considering additional constraints on the business of for-profit colleges, the court infers nothing illicit from his attempt to ensure that KHE had a voice in the discussion.

### G.    Whistleblower lawsuits

In the Amended Complaint, Plaintiff alleges that federal whistleblower actions regarding misconduct at Kaplan alerted the individual Defendants to the fraud at issue here. *Plaintiff's*

17

*Opposition* [#39] at 14.  Defendants do not directly address the whistleblower lawsuits in their pleadings.

The suits alleged that fraudulent admissions and compensation practices were being employed by advisors at KHE and named KHE or Kaplan as defendants.  *Amended Complaint* [#35] at 75-76.  Neither WPO nor the individual Defendants appear to be named as parties, nor is it alleged that they are pled as instigators or accessories in the alleged fraudulent conduct.  *See id.*  However, the court notes that the suits were listed in WPO's 2009 10-K, which also indicated that WPO would be defending its subsidiaries.  *Id.*  Even assuming that the individual Defendants were apprised of the details of these complaints, the mere fact of their existence does not supply a strong inference of scienter, absent other persuasive allegations.  *See generally Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 576-577 (6th Cir. 2008) (refusing to equate knowledge of fraud to corporation based, in part, on a whistleblower's suit).  Moreover, the fact that WPO chose to defend against such lawsuits suggests that the more plausible inference is that neither WPO nor the individual Defendants believed that the lawsuits had substance.

## IV.  Conclusion

Considering the allegations collectively, and the increased burden on Plaintiff at the outset, the court finds that any inference of scienter fails when compared with opposing inferences.  *See Tellabs*, 551 U.S. at 325.  Despite Plaintiff's attempts to distinguish compelling decisions reached by other courts who have addressed scienter in relation to alleged securities fraud in the for-profit education industry, the court is not persuaded that these facts warrant different treatment.  Read in its totality, the Amended Complaint does not sufficiently allege that the individual Defendants knowingly or recklessly misled the market.  Therefore, the court

concludes that Plaintiff has failed to allege sufficient facts to hold Defendants culpable. Because the court finds that the lack of a strong inference of scienter is dispositive, the court need not consider Defendants' remaining bases for dismissal. *See In re XM Satellite Radio Holdings Sec. Litig.*, 479 F. Supp. 2d 165, 178 n.10 (D.D.C. 2007). Therefore, Plaintiff's securities fraud claim must be dismissed. *See, e.g.*, *id.* at 187.

Moreover, this holding necessarily means that Plaintiff's control-person claim against the individual Defendants likewise fails. *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 279 (3d Cir. 1992); *see also Fannie Mae* II, 503 F. Supp. 2d at 43-46 (noting that to state a control-person claim "plaintiffs must adequately plead 'culpable participation,'" i.e., that the individual defendants acted with a sufficient state of mind). Accordingly,

IT IS HEREBY **ORDERED** as follows:

(1) Defendants' Motion to Dismiss [#37] is **GRANTED** and the case is **DISMISSED with prejudice**;[5]

---

[5] Given that this is Plaintiff's second unsuccessful attempt to survive a motion to dismiss, the court finds that dismissal with prejudice is appropriate. "[D]ismissal *with prejudice* is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)). Here, the court notes that the Amended Complaint at issue is Plaintiff's third pleading and is comprised of 150 pages and more than 375 paragraphs, much of which was derived from the testimony of at least 24 witnesses. Given the shortcomings of this voluminous and detailed pleading, the court is convinced that Plaintiff "could not possibly cure the deficiency" as it relates to scienter. *Firestone*, 76 F.3d at 1209; *see also Fannon v. Guidant Corp.*, 583 F.3d 995, 1002 (7th Cir. 2009) ("The district court was entitled to view this case as one in which the plaintiffs had, as a practical matter, a number of opportunities to craft a complaint within the standards of the PSLRA. It was therefore entitled to bring this litigation to a close with a dismissal with prejudice.").

(2) Defendants' Motion to Take Judicial Notice [#38] is **DENIED as moot**; and

(3) Plaintiff's Motion to Take Judicial Notice [#44] is **DENIED as moot**.

Dated:  March 19, 2013

*Barbara J. Rothstein*
_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE